UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


IN RE:
JAMES BRONCE HENDERSON, III,

                    Debtor.
_____

6700 DEVELOPMENT ASSOCIATES, L.L.C.,

                    Cross-Appellant,


vs.                                Case No.  2:03-cv-536-FtM-29SPC
                                   Bankr. Case No. 02-16887-9P1


JAMES BRONCE HENDERSON, III,

                    Cross-Appellee.
_____


**OPINION AND ORDER**

_____ This matter comes before the Court on a cross appeal from the
Bankruptcy Court's July 17, 2003, Amended Findings of Fact,
Conclusions of Law and Memorandum Opinion (Doc. #226)[1] sustaining
in part and overruling in part objections to a claim.  See In re
Henderson, 297 B.R. 870 (Bankr. M.D. Fla. 2003).  The Bankruptcy
Court disallowed the portion of an unsecured claim which related to
real estate commissions.  For the reasons set forth below, that
decision is affirmed.

_____

    [1]The Docket Numbers hereafter refer to the numbers assigned in
Bankruptcy Court unless otherwise noted.  Copies of the relevant
documents are included in the record transmitted by the Bankruptcy
Court or otherwise available through PACER.

**I.**

Upon the entry of a final judgment by the bankruptcy court, a party may appeal to the district court pursuant to 28 U.S.C. § 158(a).[2]  The United States District Court functions as an appellate court in reviewing decisions of the United States Bankruptcy Court.  In re Miller, 39 F.3d 301, 305 (11th Cir. 1994).  The legal conclusions of the bankruptcy court are reviewed de novo, In re JLJ, Inc., 988 F.2d 1112, 1116 (11th Cir. 1993), while findings of facts are reviewed for clear error.  Fed. R. Bankr. P. 8013; In re Thomas, 883 F.2d 991, 994 (11th Cir. 1989), cert. denied, 497 U.S. 1007 (1990).  A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed."  Crawford v. Western Elec. Co., Inc., 745 F.2d 1373, 1378 (11th Cir. 1984)(citing United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).  See also In re Cox, 338 F.3d 1238, 1241 (11th Cir. 2003).

---

[2]"A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  Catlin v. United States, 324 U.S. 229, 233 (1945); In re F.D.R. Hickory House, Inc., 60 F.3d 724, 726 (121th Cir. 1995).  The decision appealed from herein is a final order and appealable.  See In re Six, 80 F.3d 452, 455 (11th Cir. 1996).

## II.

Cross-Appellant 6700 Development Associates, L.L.C. (6700 Development) filed an unsecured claim, one of two, in excess of $6 million in Cross-Appellee James Bronce Henderson, III's (Debtor) Chapter 11 case. There were three components of this unsecured claim: (1) a claim for real estate commissions of $326,812.50 paid by 6700 Development to Kojaian Management Company (Kojaian Management) for re-leasing certain commercial premises; (2) a claim for legal expenses incurred by 6700 Development in connection with a Michigan state court lawsuit; and (3) a claim for unpaid rent. All three components were premised on a personal guaranty by Debtor of a commercial lease. Debtor filed an Objection to the claim, arguing that for various reasons none of the components should be allowed. The Bankruptcy Court allowed the portion of the claim relating to unpaid rent but disallowed the portions relating to real estate commissions and legal expenses.

In its cross-appeal, 6700 Development challenges only the disallowance of the real estate commission. It raises two issues: (1) whether the case should be remanded because the Bankruptcy Court provided inadequate findings of fact and reasons for the disallowance of the real estate commission, and (2) whether the Bankruptcy Court erred in refusing to include the real estate commission as part of its claim.

**A.**

As the Bankruptcy Court found, in 1980 Debtor joined his father's machine shop company DCT, Inc. (DCT) in Detroit, and soon thereafter became its President. Debtor operated DCT until February 14, 2002, when its creditors filed an involuntary Chapter 7 bankruptcy petition against the company.

On May 28, 1999, DCT (as tenant) signed a ten-year commercial property lease with 6700 Development (as landlord) for a 365,430 square foot building (the DCT Lease). Debtor signed the lease on behalf of DCT and also as a guarantor. The guaranty provision stated as follows:

> (a) The Guarantor does hereby absolutely, unconditionally and irrevocably guarantee to Landlord the full and complete performance of all of Tenant's covenants and obligations under this Lease and the full payment by Tenant of rentals, additional charges and other charges and amounts required to be paid hereunder during the entire Term. Guarantor's obligations hereunder shall be primary and not secondary and are independent of the obligations of Tenant.
> ....
> (d) This Guaranty shall remain and continue in full force and effect, notwithstanding (i) any alteration of this Lease by the parties hereto, whether prior or subsequent to the execution hereof, (ii) any renewal, extension, modification or amendment of this Lease, (iii) any subletting of the Demised Premises or assignment of Tenant's interest in this Lease. The Guarantor does hereby waive notice of any of the foregoing and agrees that the liability of the Guarantor hereunder shall be based upon the obligations set forth in this Lease as the same may be altered, renewed, extended, modified, amended or assigned . . .
> . . . .
> (g) . . . this guaranty shall remain in full force and effect notwithstanding the institution by or against [DCT] of bankruptcy . . . or the disaffirmance of this Lease in any such proceedings or otherwise.

-4-

DCT Lease, ¶ 34.

In September, 2001, DCT subleased approximately 115,000 square feet of this space to Visteon Corporation. DCT continued to pay rent to 6700 Development until the February, 2002, filing of the Chapter 7 involuntary petition. Pursuant to the Chapter 7 proceedings, effective April 21, 2002, DCT rejected the lease with 6700 Development.

On May 7, 2002, Visteon Corporation (as Tenant) and 6700 Development (as Landlord) entered into a lease for the entire 365,430 square foot building (the Visteon Lease). 6700 Development paid a $326,812.50 commission to Kojaian for negotiating the Visteon Lease. The Visteon Lease stated in relevant part:

> Each party represents that it has dealt with no broker or brokers in connection with the negotiation, execution and delivery of this Lease, except for CB Richard Ellis (hereinafter referred to as the "Broker"). Tenant shall be responsible for all commissions due the Broker for this Lease, as well as the Visteon Sublease; provided, however, that Tenant may seek payment of such commissions from DCT and/or J. Bronce Henderson III. . . .

> The terms and provisions of this Lease are not intended by the parties to prejudice, in any way, their respective rights against, nor to release, James B. Henderson III from his guaranties to the parties. . . .

(Doc. #210, Ex. A, ¶¶ 39.7, 40(c)).

On August 29, 2002, Debtor filed his Chapter 11 bankruptcy case, and 6700 Development thereafter filed a proof of claim for $6,751,987.27 based upon Debtor's guaranty of the DCT Lease. Debtor objected to the allowance of the $326,812.50 real estate commission paid to Kojaian Management because (1) the commission

-5-

was paid to an insider, and (2) there was no provision in the
Visteon Lease for payment of the real estate commission.

**B.**

While the Bankruptcy Court's decision stated that Debtor had
objected to the real estate commission because it was paid to an
insider, 297 B.R. at 871, it did not include this argument in its
summary of the trial arguments.  Id. at 873-74.  The Bankruptcy
Court's decision does not contain any information as to whether it
found Kojaian Management to be an insider or whether insider status
would be a proper basis to disallow the real estate commission as
part of the unsecured claim.  Accordingly, the Bankruptcy Court's
decision cannot be affirmed on the basis of the insider argument.

**C.**

The Bankruptcy Court decision recognizes that Debtor objected
to the real estate commission because there was no provision in the
Visteon Lease for a real estate commission, and summarizes 6700
Development's arguments against this position.  297 B.R. at 871,
873-74.  The Bankruptcy Court decision does not expressly resolve
the arguments, other than to disallow the real estate commission as
part of its ultimate holding.  Id. at 875.  While this is certainly
problematic, the Court concludes that the application of clear
legal principles to the undisputed facts supports the ultimate
determination by the Bankruptcy Court.

Debtor's only personal obligations to 6700 Development are based upon his guaranty of the DCT Lease.  The obligations of Debtor as guarantor of the DCT Lease are set forth in ¶ 34(a) of the DCT Lease:

> (a) The Guarantor does hereby absolutely, unconditionally and irrevocably guarantee to Landlord the full and complete performance of all of Tenant's covenants and obligations under this Lease and the full payment by Tenant of rentals, additional charges and other charges and amounts required to be paid hereunder during the entire Term.  Guarantor's obligations hereunder shall be primary and not secondary and are independent of the obligations of Tenant.

While it is clear that these obligations remain "in full force and effect" despite the bankruptcy and rejection of the DCT Lease, ¶¶ 34(d),(g), Debtor's obligations to 6700 Development are nonetheless limited to that required by ¶ 34(a).  Thus, Debtor guarantees (1) "the full and complete performance of all of [DCT]'s covenants," and (2) "the full payment by [DCT] of rentals, additional charges and other charges and amounts required to be paid hereunder during the entire Term."  If the real estate commission was not within one of these two categories, it cannot be included within the 6700 Development guaranty-based claim.

It is clear, both as a matter of law and based upon the undisputed testimony before the Bankruptcy Court, that 6700 Development was not <u>required</u> to pay Kojaian Management a real estate commission for the Visteon Lease.  While it may have been paid pursuant to a business relationship or oral agreement, the

commission was not within the scope of the obligations guaranteed by Debtor and therefore not part of an allowable claim.

It is undisputed that Michigan law applies to the DCT Lease and Guaranty. Under Michigan state law, "[t]he initial question whether contract language is ambiguous is a question of law.  If the contract language is clear and unambiguous, its meaning is a question of law."  Port Huron Educ. Ass'n, MEA/NEA v. Port Huron Area Sch. Dist., 550 N.W. 2d 228, 237 (Mich. 1996).  "Contractual language is construed according to its plain and ordinary meaning, and technical or constrained constructions are to be avoided." Dillon v. DeNooyer Chevrolet Geo, 550 N.W. 2d 846, 848 (Mich. 1996)(citing Pakideh v. Franklin Commerical Mortgage Group, Inc., 540 N.W. 2d 777 (1995)).

It is clear, from the plain and unambiguous language of the Visteon Lease, that the only broker fee required to be paid by the terms of the lease was by tenant Visteon to C.B. Richard Ellis. The Visteon Lease otherwise clearly and specifically excluded the existence of any other broker fees.  Thus, the face of the Visteon Lease demonstrates no basis to include the $326,812.50 as part of Debtor's guaranty obligation since 6700 Development was not obligated to pay such a commission.  While it is clear that the parties did not intend the Visteon Lease to diminish their rights against Debtor under the guaranty, the Visteon Lease cannot and did not create any such obligation by the Debtor to pay the commission.

-8-

Even if the Court resorts to parol evidence, it is clear that the Visteon Lease did not create an obligation to pay Kojaian Management a real estate commission.  David Martin Haboian, the representative of Kojaian Management, testified that the "paragraph was included in the lease to exclude any obligation on the part of the landlord to pay C.B. Richard Ellis a fee with respect to the new Visteon lease.  And the language, admittedly, probably goes beyond what it should have gone, . . . ."  When asked if the paragraph provides for payment of a real estate commission, the response was "No."  (Doc. #203, pp. 155-56).  When asked by the Bankruptcy Court if there was any document in existence which provides for the payment of a commission to Kojaian Management, Mr. Haboian testified "No, sir."  (Id. at 156).  When Mr. Haboian testified there was a verbal agreement to pay the commission, the Bankruptcy Court stated "It's not worth the paper its written on." (Id. at 156-57).

A *de novo* review reflects no error in the Bankruptcy Court's legal conclusion that the real estate commission of $326,812.50 should be excluded from the claim.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.  The Bankruptcy Court's July 17, 2003, Amended Findings of Fact, Conclusions of Law and Memorandum Opinion (Doc. #226) is **affirmed.**

-9-

2.   The Clerk shall close the file.   The Clerk is further directed to transmit a certified copy of this Opinion and Order to the United States Bankruptcy Court Clerk's Office.

**DONE AND ORDERED** at Fort Myers, Florida, this __24th__ day of June, 2005.

_____
JOHN E. STEELE
United States District Judge

Copies:
Hon. Alexander L. Paskay
Clerk, Bankr. M.D. Fla.
Counsel of record